### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALEXANDRA BURIKO** )<br>)<br>)<br>)<br>*Plaintiff,* )<br>)<br>v. )<br>)<br>)<br>)<br>**THE UNITED STATES DEPARTMENT OF** )<br>**THE TREASURY** )<br>    1500 Pennsylvania Ave., NW )<br>    Washington, D.C. 20220 )<br>)<br>    and )<br>)<br>**JANET L. YELLEN** )<br>**in her official capacity as** )<br>    **Secretary of the United States** )<br>    **Department of the Treasury** )<br>    1500 Pennsylvania Ave., NW )<br>    Washington, D.C. 20220 )<br>)<br>    and )<br>)<br>**THE UNITED STATES DEPARTMENT** )<br>**OF THE TREASURY, OFFICE OF FOREIGN** )<br>**ASSETS CONTROL** )<br>    1500 Pennsylvania Ave., NW )<br>    Freedman's Bank Building )<br>    Washington, D.C. 20220 )<br>)<br>    and )<br>)<br>**LISA M. PALLUCONI** )<br>**in her official capacity as** )<br>    **Acting Director of the** )<br>    **United States Department of the Treasury** )<br>    **Office of Foreign Assets Control** )<br>    1500 Pennsylvania Ave., NW )<br>    Freedman's Bank Building )| CASE. NO. 1:24-cv-3454<br><br>**COMPLAINT FOR**<br>**DECLARATORY AND**<br>**INJUNCTIVE RELIEF** |

Washington, D.C. 20220                          )
                                                )
                                                )
                            *Defendants.*        )
_____   )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, Alexandra Buriko (herein referred to as "Ms. Buriko" or "Plaintiff"), brings this Complaint for Declaratory and Injunctive Relief against Defendants, the United States Department of the Treasury; its Secretary, Janet Yellen; the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"); and its Acting Director, Lisa M. Palluconi (collectively, the "Defendants"), and in support of her complaint alleges:

### INTRODUCTION

1.      This complaint arises from Defendants' continued and unlawful failure to remove Alexandra Buriko's (Plaintiff's) name from the Specially Designated Nationals and Blocked Persons List (the "SDN List"), following her designation as a Specially Designated National ("SDN") under Executive Order ("E.O.") 14024 of April 15, 2021, and Defendants' arbitrary and capricious denial of her administrative petition for removal.

2.      In support of her complaint, Plaintiff asserts four claims.  First, that after two and a half years, the Defendants unreasonably denied her petition for removal from the SDN List based on alleged conduct that is protected by the U.S. Constitution and/or does not otherwise provide a lawful basis for a continuing sanctions designation.  Second, that the Defendants are exceeding their statutory and legal authority by claiming that Plaintiff "operates" in a certain sector of the Russian Federation economy while failing to provide a valid legal or factual basis for that conclusion.  Third, that the Defendants are acting arbitrarily and capriciously by treating Plaintiff differently than similarly situated petitioners who have demonstrated a similar change of

circumstances and whose names have been removed from the SDN List.  And fourth, that there is no continuing factual or legal basis to include Plaintiff's name on the SDN List based on information reasonably available to the Defendants.

3.      OFAC designated Ms. Buriko as an SDN on May 8, 2022, for her prior position at Public Joint Stock Company Sberbank of Russia ("Sberbank"),[1] Russia's largest retail bank. Immediately thereafter, on May 11, 2022, Ms. Buriko resigned from Sberbank and discontinued any further professional engagement with Sberbank as of May 25, 2022.  As of that time, she no longer met the legal criteria for a continuing sanctions designation.

4.      Ms. Buriko petitioned OFAC for administrative reconsideration of her SDN designation on June 2, 2022.  As part of that petition for reconsideration, Plaintiff submitted documentation proving that she had resigned from Sberbank with corroboration by reputable international media (*e.g.*, https://www.reuters.com/markets/financials/sberbank-cfo-among-latest-senior-resignations-sanctioned-russian-lender-2022-05-17/).   Over the next two years, she provided detailed responses to questions posed by OFAC in 2023 and 2024, most recently providing supplemental information to OFAC on March 11, 2024.   Since March 11, 2024, Ms. Buriko has received no meaningful engagement from OFAC.   On July 18, 2024, OFAC affirmatively indicated that it required no additional information to adjudicate her matter.   Yet, several months thereafter, OFAC had still failed to adjudicate Ms. Buriko's petition for reconsideration.   In contrast, other similarly situated parties—including a former member of

---

[1] *See* Federal Register Notice from OFAC published on May 13, 2022, identifying Ms. Alexandra Buriko as having been designated by OFAC as an SDN on May 8, 2022, "pursuant to sections 1(a)(i) and 1(a)(iii)(C) of E.O. 14024 for operating or having operated in the financial services sector of the Russian Federation economy and for being or having been a leader, official, senior executive officer, or member of the board of directors of Public Joint Stock Company Sberbank of Russia, an entity whose property and interests in property are blocked pursuant to E.O. 14024" at https://www.federalregister.gov/documents/2022/05/13/2022-10320/notice-of-ofac-sanctions-actions.

Sberbank's executive team who was designated on the same date as Ms. Buriko—had seen their matters favorably adjudicated in far less time, and their names removed accordingly from the SDN List once they demonstrated a similar change of circumstances.

5.      On November 20, 2024, Plaintiff informed Defendant, the Acting OFAC Director, that Plaintiff would pursue her legal remedies in the absence of OFAC's continued unreasonable delay in adjudicating her administrative matter.  In a good faith effort to demonstrate her willingness to engage with OFAC prior to filing suit, Ms. Buriko submitted a draft civil complaint, and indicated that she would provide OFAC with one final opportunity to adjudicate her matter before seeking this Court's intervention.  Plaintiff's efforts to resolve the matter through the administrative process—and finally see her matter adjudicated—resulted in OFAC denying her petition for reconsideration shortly thereafter on November 27, 2024.

6.      In denying her petition for reconsideration, Defendant OFAC cited: 1) certain personal communications to her former colleagues, which had previously been addressed as part of the administrative petition process; and 2) an alleged quote attributed to Ms. Buriko on a webpage that was published without her knowledge or permission and after Plaintiff's March 2024 submission to OFAC—but about which OFAC posed no single question to Plaintiff in the intervening eight months—to justify OFAC's decision to deny Plaintiff's petition.  Thus, a plain reading of OFAC's denial letter indicates that OFAC used personal communications that did not involve the transfer of anything of value, along with an unrelated reference to a webpage's inclusion of a quote that was used without Ms. Buriko's knowledge or permission, to conclude that Ms. Buriko should still be designated as an SDN.

7.      Assuming, *arguendo*, that everything that OFAC cited in its denial letter is true, OFAC still did not provide a valid legal basis for Plaintiff's continuing SDN designation.  OFAC

has abused its discretion and acted outside of its lawful authority in denying Ms. Buriko's petition for reconsideration and keeping her on the SDN List, thereby necessitating this Court's intervention.

8.     Defendants must afford Plaintiff due process and equal protection under the law. When OFAC designated Ms. Buriko as an SDN, certain legal protections attached to Defendants' actions under the Administrative Procedure Act (APA) and the U.S. Constitution.  For instance, Defendants may not act arbitrarily and capriciously through the administrative process, abuse their discretion, exceed their legal authority, or otherwise act in discordance with the law.  Further, Defendants may not deprive those affected by their actions of due process and equal protection, including providing a meaningful opportunity to demonstrate a change of circumstances and giving equal treatment to parties who are similarly situated.  By unreasonably denying her delisting petition—while other similarly situated parties have had their matters adjudicated and their names removed from the SDN List—Defendants have deprived Ms. Buriko of her rights to equal protection and due process under the U.S. Constitution and the APA.

9.     Ms. Buriko is an unemployed mother of five, living in Western Europe, with no professional ties to the Russian financial services sector.  Rather, Ms. Buriko is a *former* salaried executive who spent most of her career working for the international accounting firm KPMG— both in Russia and Canada.  During her time at KPMG, Ms. Buriko enjoyed tremendous professional success, advancing from a junior position all the way to partner.  Based on her business acumen and impressive track record, Ms. Buriko was chosen to serve as a senior executive at Sberbank.  Since separating from Sberbank on May 25, 2022—after less than two and a half years working in the Russian financial services sector—Ms. Buriko has engaged in no conduct that could justify her continued sanctions status.  On the contrary, she has taken every possible

measure to begin a new life in Western Europe with her family.  Ms. Buriko has no ties to the government of the Russian Federation; she is neither a U.S. adversary, nor a national security or foreign policy concern.  She is, instead, the victim of a broken U.S. governmental process that appears designed to keep individuals on the SDN List, regardless of whether there is an ongoing legal basis to do so.

10.    In the Russia-related sanctions program at E.O. 14024, the U.S. has sought to coordinate actions with its allies.  Nevertheless, in this instance, the U.S. is pursuing a unilateral policy against Ms. Buriko.  Since 2022, the only other country to have sanctioned her was Canada—which removed Ms. Buriko from its sanctions list on February 2, 2024.  Canada removed Ms. Buriko from its sanctions list because she no longer met the criteria to be listed under Canada's sanctions regulations.  In affirming Ms. Buriko's removal from the Canadian sanctions list, the Canadian Minister of Foreign Affairs concluded that Ms. Buriko demonstrated that she resigned from Sberbank in May 2022, thus providing reasonable grounds for her removal.  Indeed, Ms. Buriko has not worked for Sberbank—nor in any company involved in the Russian financial services sector or any blocked company—since May 2022.

11.    Defendants' actions have caused, and continue to cause, Plaintiff and her family significant personal and financial harm, despite lacking a valid legal basis for Defendants to maintain her designation as an SDN.  Ms. Buriko has historically been the primary source of income for her family. Yet, owing to her continued SDN designation, Ms. Buriko cannot secure a job in the financial services sector, or any related industry.  Further, she cannot access banking services, work in the formal economy, transact with most major companies, nor engage economically in any meaningful way in her country of residence or any other country outside of the Russian Federation. These personal and financial harms do not merely affect Ms. Buriko

directly, but also her minor children.  Ms. Buriko's minor son is a U.S. citizen, and he and the rest of Ms. Buriko's family are increasingly forced to live from savings in the absence of Ms. Buriko's ability to work.  Plaintiff and her family will continue to suffer these harms so long as Defendants continue to sanction her indefinitely despite overwhelming evidence that the original basis for Ms. Buriko's SDN designation no longer applies.  Accordingly, Ms. Buriko turns to this Court for relief.

## JURISDICTION AND VENUE

12.     This action arises under the United States Constitution, the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq*., and the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

13.     This Court may grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and Fed. R. Civ. P. Rule 57.  This Court may grant injunctive relief pursuant to Fed. R. Civ. P. Rule 65.

14.     Venue is proper in the District of Columbia as this is the district in which the events giving rise to the complaint occurred and in which Defendants reside.  28 U.S.C. §§ 1391(b), (e).

## THE PARTIES

15.     Plaintiff, Ms. Alexandra Buriko, is and was at all relevant times a citizen of the Russian Federation.  She has lived outside the Russian Federation full time since shortly after resigning from Sberbank in May 2022, and currently resides with her family in Western Europe.

16.     On May 8, 2022, Plaintiff was designated by OFAC pursuant to E.O. 14024 and her name was included on the SDN List maintained and administered by Defendant OFAC.

17.    Defendant, U.S. Department of the Treasury, is a cabinet-level U.S. governmental department.  It is led by the Secretary of the Treasury.  The U.S. Department of the Treasury's core objective is to promote economic prosperity and ensure the financial security of the United States.  Additionally, the U.S. Department of the Treasury implements and administers economic sanctions against foreign threat actors, and is responsible for overseeing Defendant OFAC.  It is located at 1500 Pennsylvania Ave., NW, Washington, D.C. 20220.

18.    Defendant, Janet L. Yellen, is the Secretary of the Treasury of the United States.  Ms. Yellin is sued in her official capacity.

19.    Defendant, OFAC, is a federal administrative agency of the U.S. Department of the Treasury, and is located at 1500 Pennsylvania Ave., NW, Freedman's Bank Building, Washington, D.C. 20220.  OFAC is lawfully responsible for administering U.S. economic sanctions programs, including by designating persons under E.O. 14024 and regulating dealings with them under those authorities.  Additionally, OFAC is responsible for serving as the sole administrative agency responsible for the reconsideration and delisting process, pursuant to 31 C.F.R. Parts 501 and 587, the "Reporting, Procedures and Penalties Regulations" and the "Russian Harmful Foreign Activities Sanctions Regulations," respectively.  OFAC is responsible for maintaining Plaintiff's name on the SDN List and denying her administrative petition for reconsideration.  OFAC is located at 1500 Pennsylvania Ave., NW, Freedman's Bank Building, Washington, D.C. 20220.

20.    Defendant, Lisa M. Palluconi, is the Acting Director of OFAC.  Ms. Palluconi is sued in her official capacity.

## FACTUAL ALLEGATIONS

*A.    OFAC Designates Plaintiff as a Specially Designated National*

21.    Plaintiff was initially designated by OFAC on May 8, 2022, for operating or having operated in the financial services sector of the Russian Federation economy and for being or having been a leader, official, senior executive officer, or member of the board of directors of Public Joint Stock Company Sberbank of Russia, an entity whose property and interests in property are blocked pursuant to E.O. 14024.  Based on the factual allegations in OFAC's press release, Ms. Buriko was one of eight (then) current or recent members of the Executive Board of Sberbank to be designated by OFAC on May 8, 2022.  At the time of her designation, Ms. Buriko served as the Chief Financial Officer (CFO) of Sberbank.

22.    Plaintiff immediately resigned from her position as CFO at Sberbank on May 11, 2022, and discontinued any further professional engagement with Sberbank as of May 25, 2022.

*B.    Plaintiff's Challenge to her OFAC Designation*

23.    Plaintiff thereafter submitted a petition for reconsideration of her designation to OFAC on June 2, 2022, in accordance with the delisting procedures found at 31 C.F.R. § 501.807. OFAC opened petition file RUSSIA-EO14024-27081 based on Plaintiff's request.

24.    In her petition for reconsideration, Ms. Buriko provided documentary evidence that she: 1) resigned from Sberbank; 2) lived in Western Europe with her family under lawful residency permits; and 3) was responsible for her family, including her minor child with U.S. citizenship, who likewise suffered because of Ms. Buriko's continuing SDN designation.

25.    Nearly nine months later, on February 23, 2023, OFAC submitted a questionnaire ("Questionnaire 1") to Ms. Buriko containing 15 questions, including several questions having nothing to do with whether Ms. Buriko continued to work for Sberbank—which formed the

principal underlying legal basis of her SDN designation. Nevertheless, Ms. Buriko provided robust responses to all of OFAC's questions within one month, on March 23, 2023.

26.    Ms. Buriko received no substantive response to her responses to Questionnaire 1. Thereafter, on June 14, 2023, and August 8, 2023, Plaintiff submitted letters to OFAC requesting an update on her matter. OFAC likewise provided no substantive response to those letters, nor to Plaintiff's follow-up communications in September and October 2023 requesting an update on her matter.

27.    On November 10, 2023, Plaintiff communicated with OFAC leadership via email. In that email, Plaintiff indicated that she was fully willing to resolve her matter through the administrative process. However, if OFAC was unwilling to prioritize and adjudicate her case, Ms. Buriko made clear that she would consider litigation. Additionally, Plaintiff noted that OFAC was treating similarly situated parties differently, in potential violation of U.S. law, including the APA.

28.    On November 16, 2023—again, nearly nine months after Plaintiff submitted responses to Questionnaire 1—Defendant OFAC provided a non-substantive response to Plaintiff from "OFAC.Reconsideration[at]treasury.gov" indicating that Ms. Buriko's petition was still under internal review and that OFAC could not provide a timeline for adjudication at that point. OFAC indicated that Ms. Buriko's matter was receiving "due consideration."

29.    On November 20, 2023, Plaintiff responded to OFAC leadership, noting that Ms. Buriko disagreed that her petition was receiving "due consideration" under the APA, and identifying several other similarly situated petitioners whose cases had been adjudicated in less time than Ms. Buriko's matter. Plaintiff further identified this Circuit's binding precedent at *Kreis v. Sec'y of Air Force*, 406 F.3d 684, 687 (D.C. Cir. 2005), as providing legal authority that agencies

must treat similarly situated cases similarly under the APA, unless they can provide a legitimate reason for failing to do so.

30.    In response to Plaintiff's communication, on November 20, 2023, OFAC responded that OFAC was actively investigating Ms. Buriko's case, that no two cases are ever identical, and that OFAC would not be able to provide a timeline as to adjudication. OFAC also indicated at this time that OFAC had all the information from Ms. Buriko that OFAC needed to move forward, presumably with a final adjudication.

31.    On December 6, 2023, Plaintiff communicated with OFAC's then-Director, describing the matter up to that point, and requesting immediate adjudication of Ms. Buriko's petition. This communication previewed the facts that would be presented in court if the matter were to be litigated. In particular, Plaintiff included a link to a *Reuters* article from May 2022 covering her resignation from Sberbank (https://www.reuters.com/markets/financials/sberbank-cfo-among-latest-senior-resignations-sanctioned-russian-lender-2022-05-17/). Plaintiff identified several other former Russian banking officials who resigned from their roles, and who OFAC delisted within less time than Plaintiff's petition had been delayed up to that point. Plaintiff also indicated that she had recently given birth to a daughter and had spent the previous five months acting as her family's primary caregiver and taking care of an infant, indicating that she was otherwise occupied and not seeking any employment opportunities (much less in the Russian financial services sector). Again, Plaintiff emphasized that binding Circuit precedent obligated OFAC to treat Ms. Buriko's matter similarly to other similarly situated petitioners. Plaintiff further noted that she supported herself from savings while caring for her family.

32.     On December 8, 2023, Plaintiff received a reply from OFAC reiterating that OFAC could not provide a timeline for Ms. Buriko's adjudication, but that OFAC would communicate if it had any additional questions or required clarification on her matter.

33.     Plaintiff replied to OFAC on December 12, 2023, noting that OFAC was consistently able to issue designation packages and add persons to the SDN List in vastly disproportionate numbers when compared with petition adjudications.  Plaintiff further emphasized that, by any objective measure, one and a half years should be a sufficient amount of time to determine whether Ms. Buriko still worked for Sberbank or operated in the Russian Federation economy.  Plaintiff again reiterated her desire to see the matter resolved through the administrative process, without seeking this Court's intervention.

34.     Plaintiff received no reply to her December 12, 2023, communication.  On January 1, 2024, and again on January 7, 2024, Plaintiff communicated directly with the then-OFAC Director, seeking an update on her matter.

35.     On January 9, 2024, the then-OFAC Director indicated that OFAC would be contacting Plaintiff thereafter to relay certain information regarding the status of Plaintiff's matter. Further, the then-OFAC Director indicated that he was reviewing the administrative record at that time.

36.     On January 11, 2024, nearly one year after sending Questionnaire 1, and ten months after receiving answers to that initial inquiry, OFAC submitted further questions via email ("Questionnaire 2") regarding Ms. Buriko's alleged ongoing contacts with prior or current officials with Sberbank.  Questionnaire 2 followed two months of continuous contact between Plaintiff and OFAC in which the Defendants indicated that OFAC had enough information to render a decision, while the Plaintiff continued to make clear that she would pursue litigation in the absence of

forward movement in the administrative process.  Rather than adjudicating the matter, OFAC instead issued further questions, without providing any factual or evidentiary basis for OFAC's additional inquiry.  This had the effect of unreasonably delaying this matter even further.  Indeed, it took nearly another year before OFAC rendered its decision.

37.    On March 11, 2024, Plaintiff submitted supplemental information indicating that she had not engaged in any activity to seek an ongoing professional relationship with Sberbank. Plaintiff instead affirmed that she severed all professional ties with Sberbank. Indeed, immediately after her designation, Plaintiff's efforts to sever those ties with Sberbank were reported by international media (https://www.reuters.com/markets/financials/sberbank-cfo-among-latest-senior-resignations-sanctioned-russian-lender-2022-05-17/).  Plaintiff further stated that any communications with former or current Sberbank officials after her resignation were entirely personal in nature, and that she was not working in or seeking employment in the Russian financial services sector in any capacity.  As part of this additional submission, Ms. Buriko noted that Canada had removed her from its sanctions list on February 2, 2024 (https://gazette.gc.ca/rp-pr/p2/2024/2024-02-14/html/sor-dors12-eng.html), and she provided documentary evidence in support of this fact.  To date, Plaintiff has been involved in no conduct that would provide a legal basis for her continued designation as an SDN.  Under penalty of U.S. law (18 U.S.C. § 1001), Plaintiff swore to OFAC that she was no longer involved in any conduct that would form a legal basis for her SDN designation.

38.    Thereafter, on June 4, 2024 and June 11, 2024, Plaintiff communicated with OFAC, seeking a further update on her matter.  On June 11, 2024, OFAC stated that OFAC was in the "home stretch" regarding Ms. Buriko's petition, and finalizing its evaluation of the information she submitted.

39.     On July 11, 2024, Plaintiff again sought an update on her matter from OFAC.  At that time, Plaintiff noted that another former Russian banking executive—Alexey Panferov—had recently been removed from the SDN List, while Ms. Buriko's matter continued to be unreasonably delayed.  Again, Plaintiff noted that D.C. Circuit precedent required U.S. federal agencies to treat similarly situated parties similarly, unless they can provide a legitimate reason for failing to do so.  Plaintiff further emphasized that she had done everything possible to demonstrate a change of circumstances.

40.     OFAC responded on July 18, 2024, stating that OFAC did not have any substantive update, but that OFAC management was personally involved in the adjudication of the case. Further, OFAC indicated that the agency did not need any additional information, and that the "hope" was to have a "final position soon."

41.     Accepting in good faith that OFAC was, indeed, in the "home stretch" of reaching a decision, Plaintiff exercised restraint in allowing OFAC to complete its administrative process. Nevertheless, after four more months with no further substantive update, on Wednesday, November 20, 2024, Plaintiff provided OFAC with a final opportunity to adjudicate her matter before seeking this Court's intervention.  Ms. Buriko provided to Defendant, OFAC's Acting Director, a near final draft of a civil complaint alleging unreasonable delay pursuant to the APA. Ms. Buriko further stated that she anticipated filing her complaint the following Monday, November 25th, if OFAC had not issued a decision by that time.  In response to Plaintiff's email communication, OFAC's Acting Director replied on Friday, November 22nd, indicating that a determination was in the final stages of review, and that Ms. Buriko would be hearing back from OFAC shortly.  On Monday, November 25th, Plaintiff indicated to the Acting OFAC Director that she would hold on filing her complaint until Wednesday, November 27, 2024, based on OFAC's

representation that the matter was in the final stages of review.  In response, OFAC's Acting Director stated on Monday, November 25th, that she had reviewed the matter, and that the OFAC team was finalizing its adjudication.

      *C.*    *OFAC's Denial of Plaintiff's Administrative Request for Reconsideration*

    42.    On Wednesday, November 27, 2024, OFAC sent Plaintiff a denial letter regarding her petition for administrative reconsideration.  In the denial letter, OFAC cited the same personal communications that Plaintiff already addressed in her supplemental submission to OFAC on March 11, 2024, and re-alleged that Plaintiff had somehow sought an ongoing working relationship with Sberbank following her resignation from Sberbank in May 2022.  Further, OFAC stated that a webpage published on March 21, 2024 by "SberUniversity," which OFAC described as "Sberbank's corporate university," contained a quotation attributed to Ms. Buriko promoting a SberUniversity product.  Based on this alleged quotation—which OFAC acknowledged was merely "attributed" to Ms. Buriko—OFAC concluded that this webpage cast "additional doubt on representations [Ms. Buriko] made to OFAC that she no longer operates in the financial sector of the Russian Federation economy."

    43.    Importantly, OFAC incorrectly identified operating in the "financial sector" of the Russian Federation economy in its conclusory statement that this quotation served as a basis for Plaintiff's continued designation.  In contrast, OFAC has instead determined that the Russian "financial *services* sector" is subject to potential U.S. economic sanctions designations (https://ofac.treasury.gov/media/918726/download?inline), and not the entire financial sector, which substantially and impermissibly broadens OFAC's legal jurisdiction.  Further, OFAC failed to define several terms, such as "operates," such that Ms. Buriko has no real sense of what behavior she exhibits or has exhibited that would provide a reason for her continued designation.  Moreover,

OFAC failed to explain how personal communications in which no value has been transferred—and that are generally exempt from E.O. 14024 transactional prohibitions, as per 31 CFR § 587.205(a)—would qualify as operating in a given sector of the Russian Federation economy. Additionally, OFAC did not provide any basis to explain how an unauthorized quote that was attributed to Ms. Buriko could cast doubt on representations that Ms. Buriko no longer "operates" in the Russian Federation economy. OFAC provided no indication, for instance, that Ms. Buriko received any consideration for that quote (or even made the statement in the first place), nor had OFAC ever asked Plaintiff about the quotation despite having ample opportunities over the past eight months to do so.

44.     Thus, at bottom, Ms. Buriko is left with the impression that her petition denial is predicated on exempt personal communications—which would also be protected speech under the U.S. Constitution—along with the unauthorized use of a quote attributed to Ms. Buriko. OFAC provided no further legal or factual basis to support its conclusion that Plaintiff somehow operates in a given sector of the Russian Federation economy, leaving Plaintiff with no meaningful idea of what behavior she could change to satisfy OFAC's arbitrary rubric for an SDN delisting, especially when considered with other similarly situated parties.

45.     At the heart of U.S. sanctions law and policy is the stated purpose that sanctions are impermanent and used to change behavior. Indeed, OFAC's stated policy of imposing sanctions is that they are "not to punish, but to bring about a positive change of behavior." This has not been the case for Ms. Buriko, who has clearly demonstrated a change of behavior and supported her petition with overwhelming evidence. However, OFAC cited legally exempt personal communications that did not involve the transfer of anything of value—and which had already been addressed as part of the administrative process for reconsideration—as a basis for

OFAC's denial of her petition.  If Plaintiff cannot be removed from the SDN List based on her resignation from Sberbank, moving her family to Western Europe, and remaining unemployed for the past two and a half years, then there is effectively nothing that she can do to end her status as a sanctioned person because she has already terminated the underlying legal basis for her SDN designation.  Further—and after two and a half years of pursuing this matter through the administrative process, only for it to be unfairly denied—Plaintiff is still unsure of what OFAC would require to determine that she no longer merits inclusion on the SDN List.  Plaintiff cannot prove a negative: she has provided OFAC with all reasonable information to demonstrate that the original predicate basis for her designation no longer applies, and that she should be removed from the SDN List.  There is no meaningful way for Plaintiff to challenge her designation pursuant to an administrative process that does not appear to follow the law or any articulable procedure in good faith.  Thus, Plaintiff has no other recourse than to respectfully ask this Court to right the many wrongs that Defendants have caused to Plaintiff and her minor children—including a U.S. citizen—through their arbitrary action of keeping Ms. Buriko on the SDN List, and through their capricious denial of her administrative petition based on protected speech and conclusory statements that she somehow continues to operate in the Russian Federation economy while living unemployed in Western Europe.

## LEGAL CLAIMS

### COUNT I

DEFENDANTS' DENIAL OF PLAINTIFF'S PETITION FOR RECONSIDERATION BASED ON EXEMPTED PERSONAL COMMUNICATIONS THAT DID NOT INVOLVE THE TRANSFER OF ANYTHING OF VALUE CONSTITUTES AGENCY ACTION THAT IS CONTRARY TO CONSTITUTIONAL RIGHT AND IN EXCESS OF STATUTORY JURISDICTION, AUTHORITY, OR LIMITATIONS IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

46.     Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

47.     The Administrative Procedure Act (APA) empowers a reviewing court to set aside agency action found to be, *inter alia*, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or contrary to constitutional right, power, privilege, or immunity, or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, or without observance of procedure required by law.  5 U.S.C. § 706(2).  Further, the APA empowers a reviewing court to decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.  5 U.S.C. § 706; *see also Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2272-2273 (2024).

48.     Under the APA, "agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent *or denial thereof*, or failure to act."  5 U.S.C. § 706(1) and 5 U.S.C. § 551(13) (emphasis added).

49.     Under the APA, reviewing courts are required to compel agency actions unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

50.     Defendants are acting in excess of statutory jurisdiction, authority, or limitations, and in violation of Plaintiff's rights under the APA and U.S. Constitution by citing exempted personal communications as grounds for denying her petition for reconsideration.  Defendants

stated in their November 27, 2024, petition denial that Plaintiff sought an ongoing working relationship with Sberbank following her resignation in May 2022, which Ms. Buriko addressed and refuted under penalty of U.S. law as part of the administrative petition process.  By then citing personal communications with (then) current and former Sberbank employees as a basis for their petition denial—which Plaintiff previously addressed as part of her administrative petition for reconsideration—Defendants are acting in excess of statutory and regulatory limitations that exempt from the prohibitions found at 31 C.F.R. Part 587 such personal communications that do not involve the transfer of anything of value.  31 C.F.R. § 587.205(a).

**COUNT II**

DEFENDANTS' CONCLUSION THAT PLAINTIFF IS OPERATING IN THE FINANCIAL SERVICES SECTOR OF THE RUSSIAN FEDERATION ECONOMY CONSTITUTES AGENCY ACTION THAT IS ARBITRARY AND CAPRICIOUS, AN ABUSE OF DISCRETION, AND IN EXCESS OF STATUTORY JURISDICTION, AUTHORITY, OR LIMITATIONS

51.    Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

52.    The APA empowers a reviewing court to set aside agency action found to be, *inter alia*, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or contrary to constitutional right, power, privilege, or immunity, or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, or without observance of procedure required by law.  5 U.S.C. § 706(2).  Further, the APA empowers a reviewing court to decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.  5 U.S.C. § 706; *see also Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2272-2273 (2024).

19

53.     Under the APA, "agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent *or denial thereof*, or failure to act."  5 U.S.C. § 706(1) and 5 U.S.C. § 551(13) (emphasis added).

54.     Under the APA, reviewing courts are required to compel agency actions unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

55.     Defendants are acting in excess of statutory jurisdiction, authority, or limitations, in violation of the APA by citing an alleged quote used without authorization by a party identified as "SberUniversity" as a basis to deny Plaintiff's petition for reconsideration.  In citing this alleged quote as a basis to deny her petition, Defendants concluded without any reasonable basis and without any inquiry that Plaintiff: 1) issued the quote; 2) issued the quote after she had resigned from Sberbank in May 2022; 3) authorized the use of the quote after she had resigned from Sberbank in May 2022 (if at all); or 4) received anything of value for the use of her alleged quote. Additionally, Defendants provided no reasonable basis to conclude that SberUniversity is a blocked person, instead relying on conclusory language that it is "Sberbank's corporate university," without: 1) defining any of those terms; 2) stating a basis for their conclusion(s); or 3) alleging—much less providing a reason to believe—that SberUniversity's ownership is such that it is blocked by operation of U.S. law pursuant to 31 C.F.R. § 587.406.

56.     Further, Defendants concluded that this alleged quote cast doubts on representations that Plaintiff made to OFAC that she no longer "operates in the financial sector" of the Russian Federation economy.  By incorrectly identifying the sector of the Russian Federation economy that is subject to a determination for a sanctions designation under E.O. 14024, Defendants acted outside their legal authority and impermissibly broadened the legal basis for which an ongoing SDN designation—or petition denial—may be based.  Moreover, Defendants

provided no reasonable indication of what Ms. Buriko has done to operate in any sector of the Russian Federation economy, nor defined that term ("operates") in any lawful way.

57.     Thus, Defendants impermissibly failed to define how Plaintiff operates in a sector of the Russian Federation economy that is not actually the subject of U.S. economic sanctions designations, thus providing a legally deficient basis for denying Plaintiff's petition for reconsideration.  Further, Plaintiff's conclusion that Plaintiff still somehow meets the lawful basis for a continuing SDN designation constitutes agency action that is arbitrary and capricious.

## COUNT III

**DEFENDANTS' TREATMENT OF SIMILARLY SITUATED PARTIES DIFFERENTLY UNDER THE SAME AGENCY PROCESS UNDER E.O. 14024 AND 31 C.F.R. 501.807 WITHOUT A LEGITIMATE REASON CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION AND AGENCY ACTION NOT IN ACCORDANCE WITH THE LAW IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**

58.     Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

59.     Under binding precedent in this Circuit, U.S. administrative agencies must treat similarly situated parties similarly or, in the alternative, provide a legitimate reason as to why they are treating them differently.  Plaintiff is similarly situated as at least seven other petitioners who: 1) worked for SDN Russian banks; 2) were designated as SDNs pursuant to E.O. 14024 because of their employment with SDN Russian banks; 3) resigned from those banks; 4) petitioned for reconsideration of their designation pursuant to 31 C.F.R. § 501.807; and 5) were removed from the SDN List after they resigned from those Russian banks because the predicate basis for their designation no longer applied.  In contrast to Ms. Buriko, those other parties' petitions were adjudicated in less time than Plaintiff's, and their names removed from the SDN List, resulting in an impermissible material difference in how Plaintiff's petition was considered and adjudicated

under the same regulatory process found at 31 C.F.R. § 501.807 when compared with similarly situated petitioners.  Defendants have failed to provide a legitimate reason for treating Plaintiff, a similarly situated party, in a different manner under the same administrative process.  Thus, Defendants are denying Plaintiff equal protection under the law and without observance of procedure required by law in violation of the APA and Ms. Buriko's due process rights.

60.     Defendants' failure to render a favorable decision on Plaintiff's delisting petition and remove her name from the SDN List, despite having definitive evidence in their possession that Plaintiff does not meet the legal criteria for an ongoing designation under E.O. 14024, means that Defendants are treating Plaintiff differently than similarly situated parties.  Plaintiff will continue to suffer the consequences of her designation so long as Defendants persist in treating Plaintiff differently than similarly situated parties.

**COUNT IV**

DEFENDANTS' FAILURE TO REMOVE PLAINTIFF FROM THE SDN LIST DESPITE INDISPUTABLE EVIDENCE THAT PLAINTIFF DOES NOT MEET THE LEGAL CRITERIA FOR CONTINUED DESIGNATION UNDER E.O. 14024 CONSTITUTES UNLAWFUL AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT

61.     Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

62.     Under the APA, agencies are required "to conclude a matter presented to it…[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time." 5 U.S.C. § 555(b).

63.     Under the APA, "agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent *or denial thereof*, or *failure to act*." 5 U.S.C. § 706(1) (emphasis added). Courts are required to hold unlawful and set aside agency action, findings, and

conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. §706(2)(A).

64.    Defendants' failure to remove Plaintiff from the SDN List after her lengthy administrative petition for reconsideration, despite having definitive evidence in their possession that Plaintiff does not meet the criteria for an ongoing designation under E.O. 14024, constitutes agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law in violation of the APA.  Specifically, Defendants had—or could have reasonably obtained—information immediately following Plaintiff's designation that invalidated the basis for her designation.  Further, Plaintiff has since presented information and documents to Defendants unequivocally demonstrating that she no longer meets the criteria for designation under E.O. 14024 (and has not for over two and a half years), and Defendants have failed to remove her name from the SDN List based on that information.

## RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court:

A.    Set aside Defendants' actions as unlawful and declare and/or order Defendants' rescission of Plaintiff's designation under E.O. 14024 and removal of her name from OFAC's SDN List;

B.    Grant an award to Plaintiff of costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq*., and any other applicable provision of law; and

C.    Such other and further relief as the Court may deem proper.

Dated: December 11, 2024

Respectfully submitted,

/s/ Michael Parker, Esq.
Michael Parker, Esq.
Arktouros, PLLC
1717 N St., NW, Suite 1
Washington, D.C. 20036
Telephone: (202) 403-0599
Email: parker@arktouros.co
D.C. Bar No. 1685884

*Counsel for*
*Alexandra Buriko*